## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. **2:13 cr 183** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| **AMER AHMAD** | : | **COUNT 1: 18 U.S.C. § 371** |
| | : | **(Conspiracy)** |
| **MOHAMMED NOURE ALO, and** | : | |
| | : | **COUNT 2: 18 U.S.C. § 666 and 2** |
| **JOSEPH M. CHIAVAROLI,** | : | **(Federal Program Bribery)** |
| | : | |
| **Defendants** | : | **COUNT 3:  18 U.S.C. §§ 1343, 1346 and 2** |
| | : | **(Honest Services Wire Fraud)** |
| | : | |
| | : | **COUNTS 4-6: 18 U.S.C. § 1957 and 2** |
| | : | **(Money Laundering)** |
| | : | |
| | : | **COUNT 7: 18 U.S.C. § 1956(h)** |
| | : | **(Money Laundering Conspiracy)** |
| | : | |
| | : | **COUNT 8: 18 U.S.C. § 1001** |
| | : | **(False Statements)** |
| | : | |
| | : | **Forfeiture Allegation:  18 U.S.C.** |
| | : | **§ 981(a)(1)(C) and 28 U.S.C. § 2461(c)** |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

## GENERAL ALLEGATIONS

All dates and times in this Indictment are alleged to be "on or about" the specific date stated.  At all times relevant in this Indictment:

1.     The Treasurer of the State of Ohio is the state's cash manager and chief investment officer with the duty of managing and collecting public funds.  The Office of the

Treasurer of the State of Ohio ("TOS") has an Investments Department whose responsibility is to actively manage the state's multi-billion dollar investment portfolios. The Investments Department staff is responsible for developing strategies designed to maintain target levels of safety, liquidity and return as directed by the Treasurer's Investment Policy. The State of Ohio, whose funds are invested by the TOS, receives in excess of $10,000 in federal funding annually.

2.      Defendant AMER AHMAD was appointed Chief Financial Officer (CFO) of the TOS in 2008. On February 27, 2009, AHMAD was appointed the Deputy Treasurer in addition to continuing his duties as CFO. Additionally, AHMAD was the president of Five Rivers Partners, LLC, a limited liability company owned by AHMAD and his spouse. In or around December of 2009, as a result of an initial investment of $150,000, AHMAD, through Five Rivers Partners, LLC, became a partial owner of an Ohio landscaping business known as Going Green Landscapes and Lawn Care ("GGL"). At all times relevant to this indictment, AHMAD was an Agent of the State of Ohio.

3.      Douglas E. Hampton was a broker and financial advisor operating Hampton Capital Financial Management ("HCM"). AHMAD and his spouse employed Hampton as their financial advisor since 1996. On or about November 18, 2009, AHMAD and his spouse held a financial account with HCM that AHMAD claimed had a then-present market value of $400,000. Hampton and AHMAD attended high school together.

4.      Defendant JOSEPH M. CHIAVAROLI was founder and part-owner of Going Green Landscapes and Lawn Care ("GGL"). On or about November 15, 2009, defendant CHIAVAROLI executed a bill of sale transferring forty-four (44%) ownership of GGL to AHMAD through Five Rivers Partners, LLC in exchange for $150,000.

2

5.    MOHAMMED NOURE ALO is a lawyer and was a partner and founding member of a Columbus-based law firm specializing in immigration law.  AHMAD and ALO were close personal friends.  On or about  November 15, 2009, ALO's law firm was appointed as "attorneys-in-fact to take all appropriate and necessary actions to administer the transfer" of a forty-four (44%) ownership interest from defendant CHIAVAROLI's GGL to defendant AHMAD's Five Rivers Partners, LLC.  ALO was the registered agent for Five Rivers Partners, LLC, with the Ohio Secretary of State.  On or about February 10, 2010, while AHMAD served the State of Ohio as Deputy Treasurer, ALO became a registered lobbyist to the State of Ohio. ALO had no lobbying experience prior to that date.

## COUNT ONE

### (Conspiracy, 18 U.S.C. § 371)

6.    The allegations contained in Paragraphs 1 through 5 of this Indictment are realleged as though fully set forth herein.

7.    From in or around January 2009 and continuing through in or around January 2011, in the Southern District of Ohio and elsewhere, defendants

**AMER AHMAD,**
**MOHAMMED NOURE ALO,**
**and**
**JOSEPH M. CHIAVAROLI**

and other persons known and unknown to the Grand Jury, did knowingly conspire and agree with each other to commit offenses against the United States, including federal program bribery, honest services wire fraud, and money laundering, in that:

3

a.    Defendant AHMAD, as an Agent of the State of Ohio, corruptly solicited, demanded, accepted and agreed to accept money and things of value from Hampton and HCM, intending to be influenced and rewarded in connection any business, transaction and series of transactions of Ohio valued at $5,000 or more, that is payments from Hampton were accepted by AHMAD, ALO, CHIAVAROLI, and companies under their control, in exchange for the award of lucrative brokerage services business to Hampton and HCM in violation of 18 U.S.C. §§ 666 (a)(1)(B) and 2.

b.    Hampton corruptly gave, offered, and promised to give money and other things of value to AHMAD, ALO, CHIAVAROLI, and companies within their control, with the intent to influence AHMAD,  an agent of the State of Ohio, in connection with a business transaction and series of transactions valued at $5,000 or more, that is Hampton made payments to AHMAD, ALO, CHIAVAROLI, and companies within their control, including GGL, in return for AHMAD's influencing, in his capacity as Deputy Treasurer, Ohio's award of lucrative brokerage services business to Hampton and HCM in violation of 18 U.S.C. §§ 666 (a)(2) and 2.

c.    Defendants AHMAD, ALO, CHIAVAROLI and Hampton devised and intended to devise a scheme and artifice to defraud and deprive the citizens of the State of Ohio, the government of Ohio, and the Treasury of the State of Ohio of their right to honest services of AHMAD through bribery, kickbacks, and the concealment of material information, and to use the wires, in violation of 18 U.S.C. §§ 1343, 1346 and 2.

d.    Defendant AHMAD, Hampton, and CHIAVAROLI transferred the proceeds of a specified unlawful activity, the proceeds from federal programs bribery in violation of Title 18, United States Code, §§ 666 and 2, and honest services wire fraud in violation of Title

4

18, United States Code, §§ 1343, 1346, and 2 that is, AHMAD, Hampton, and CHIAVAROLI knowingly engaged and caused another to engage in monetary transactions in criminally derived property that was of a value greater than $10,000.00 and was derived from said specified unlawful activity, and that affected interstate and foreign commerce in violation of 18 U.S.C. § 1957 and 2.

## PURPOSE OF THE CONSPIRACY

8. The purpose of the conspiracy was for defendants AHMAD, ALO, CHIAVAROLI, and Hampton to personally enrich themselves, their friends and associates, and their businesses, by using AHMAD's position in the TOS to secure lucrative state business for Hampton in exchange for payments to AHMAD, ALO, CHIAVAROLI, and companies under their control, and to conceal the conspiracy.

## MANNER AND MEANS

9. The conspiracy was carried out through the following manner and means:

a. Defendant AHMAD promised to take and did in fact take official action, including selecting and designating Hampton as an authorized broker to conduct a series of lucrative securities trades on behalf of the State of Ohio and TOS.

b. Hampton provided defendants AHMAD, ALO, CHIAVAROLI, and GGL, a company within their control, money and other things of value in exchange for AHMAD's official acts, including selecting and designating Hampton as the authorized broker to conduct a series of lucrative securities trades on behalf of TOS.

5

c.    In his capacity as the TOS's Deputy Treasurer, AHMAD took official acts and used official influence to to ensure that Hampton was included on the list of brokers authorized to conduct securities trades on behalf of the State of Ohio and TOS

d.    According to a TOS memorandum authored by defendant AHMAD on December 24, 2009, TOS's investment strategy would not involve buying and holding investments, but would rather make "5-10 trades per day" with daily net value assessments. This trading strategy devised by defendant AHMAD in December 2009 generated numerous lucrative opportunities for trades by authorized brokers, such as Hampton.

e.    After ensuring Hampton's inclusion on the approved broker list for TOS, Hampton received significantly more business from TOS than any other brokers approved to provide brokerage services for TOS investments.

f.    As a consequence of defendant AHMAD's influence in his capacity of Deputy Treasurer, Hampton's inclusion on TOS's approved broker list resulted in a sharp increase in Hampton and HCM's revenue. The total revenue that Hampton received in commissions as a result of trading on behalf of TOS during the conspiracy amounted to approximately $3,212,877.91.

g.    In return for defendant AHMAD providing Hampton with TOS's lucrative brokerage services business, Hampton provided a payment in connection with the award of TOS business to ALO, a close personal friend of AHMAD's and the agent for AHMAD's Five Rivers Partners, LLC, disguised  as "legal fees," totaling approximately $123,622.50.

h.    Hampton also made payments to AHMAD totaling approximately $400,000 disguised as "loans" to GGL, a business controlled by AHMAD and CHIAVAROLI.

6

i.      Defendant AMER AHMAD and Hampton attempted to conceal and did conceal the crimes by, among other things, withholding material facts from the TOS about the nature of their relationship to each other and to ALO.

j.      Defendant AMER AHMAD attempted to conceal and did conceal the crimes by, among other things, withholding material facts from the Ohio Secretary of State and the Ohio Ethics Commission about AHMAD's ownership interest in GGL.

k.      Defendant AMER AHMAD attempted to conceal and did conceal their crimes by, among other things, instructing his subordinates at the TOS's Investment Department to conceal AHMAD's role on internal paperwork concerning trades purportedly conducted by Hampton at AHMAD's direction.

l.      Defendant AMER AHMAD and JOSEPH CHIAVAROLI attempted to conceal and did conceal the crimes by, among other things, deliberately not disclosing to GGL's employees and other investors Hampton's role in infusing money into GGL's bank accounts.

## OVERT ACTS

10.     In furtherance of the conspiracy and to affect the objects thereof, the defendants and or other co-conspirators known and unknown to the Grand Jury committed the following overt acts, among others, in the Southern District of Ohio and elsewhere:

a.      On or about February 3, 2009, Hampton sent an email to defendant AHMAD's email address at the TOS which stated in part: "Let me know about that [RFI] process."

b.      On or before June 1, 2009, Hampton submitted a completed Request for Information (RFI) for Broker/Dealer Services to the TOS where it was reviewed by the selection committee led by defendant AHMAD.

7

          c.       In or around July 2009, following meetings of the Broker/Dealer RFI Committee led by defendant AHMAD, AHMAD recommended to the Treasurer for the State of Ohio that Hampton be selected as an approved broker on behalf of the TOS. On September 9, 2009, AHMAD wrote to Hampton on TOS letterhead, "looking forward to working w/ you @ TOS, a.a."

          d.       On or about October 2, 2009, Hampton conducted his first trade on behalf of TOS as an authorized broker.

          e.       On or about October 8, 2009, defendant ALO transmitted to Hampton via email a fictitious engagement agreement for Hampton's signature purporting to hire ALO for "ALL LOBBYING AND LEGAL NEEDS."

          f.       On or about October 14, 2009, Hampton conducted a series of trades on behalf of the TOS and received total commissions in the amount of $232,289.

          g.       On or about November 10, 2009, Hampton conducted a series of trades on behalf of the TOS from which Hampton received a total commission in the amount of $63,769.

          h.       On or about November 15, 2009, defendant AHMAD and CHIAVAROLI executed a Transfer Agreement in which defendant AHMAD, through Five Rivers Partners, LLC, acquired a forty four percent (44%) ownership interest in GGL from CHIAVAROLI for the agreed upon purchase price of $150,000. Defendant ALO's law firm was appointed by the parties to administer the transfer.

          i.       In return for defendant AHMAD's providing Hampton with TOS's lucrative brokerage services business, AHMAD directed Hampton to provide a payment to defendant ALO, disguised as "legal fees" totaling approximately $123,622.50. Regarding this

first payment. AHMAD told Hampton that Hampton would receive a bill from ALO and that Hampton should send the payment to ALO who would in turn route payment to AHMAD.

          j.      On or about December 17, 2009, defendant ALO transmitted to Hampton via email a fictitious invoice for $123,622.50 for "Consultation and representation on all legal matters" from "1/6/2009 - 12/17/2009."

          k.      On or about December 17, 2009, defendant ALO transmitted to Hampton via email instructions and account information for Hampton to make a wire transfer to the bank account of ALO's law firm in the amount of $123,622.50.

          l.      On or about December 18, 2009, defendant ALO transmitted via email additional instructions and a different account number for Hampton to make the wire transfer in the amount of $123,622.50 to ALO's personal account instead of ALO's law firm account.

          m.      On or about December 18, 2009, Hampton made a wire transfer from Hampton's business account at RBS Citizen's Bank, in the amount of $123,622.50 to defendant ALO's personal account at JP Morgan Chase.

          n.      On or about December 24, 2009, defendant AHMAD drafted a confidential TOS memorandum to the Ohio Treasurer which, among other things, identified Hampton and HCM as among the group of TOS's seven "core" trading partners.

          o.      On or about February 9, 2010, Hampton conducted a single trade on behalf of the TOS from which Hampton received a total commission in the amount of $74,769.

          On or about the dates listed below, defendant AHMAD and Hampton committed the following overt acts by executing additional trades on behalf of the TOS.

| Overt Act | Date | Broker | Par Amount | TOS Trader |
|:---:|:---:|:---|:---|:---:|
| p. | 3/25/2010 | HAMPTON | 50,000,000.00 | AHMAD |
| q. | 3/25/2010 | HAMPTON | 50,000,000.00 | AHMAD |
| r. | 3/29/2010 | HAMPTON | 50,000,000.00 | AHMAD |
| s. | 3/31/2010 | HAMPTON | 50,000,000.00 | AHMAD |
| t. | 3/31/2010 | HAMPTON | 50,000,000.00 | AHMAD |

u.      On or about March 27, 2010, defendant AHMAD added his name to a bank account belonging to GGL as GGL's "Vice President."

v.      On or about March 30, 2010, Hampton wire transferred $100,000 from Hampton's personal account at RBS Citizen's Bank to GGL's business checking account at JP Morgan Chase.

w.      On or about March 30, 2010, defendant AHMAD and CHIAVAROLI used some of the $100,000 wire transfer from Hampton to pay $22,000 to AHMAD's personal credit card.

x.      On or about April 16, 2010, CHIAVAROLI obtained a cashier's check for $25,000 made payable to defendant AHMAD from GGL's funds.

y.      On or about April 19, 2010, CHIAVAROLI deposited $17,097 in cash into his personal bank account.

z.      On or about April 19, 2010, CHIAVAROLI obtained a cashier's check for $9,500 made payable to defendant AHMAD from GGL's funds.

aa.      On or about April 20, 2010, defendant AHMAD deposited the two cashier's checks totaling $34,500 to AHMAD's personal account.

10

bb.     On or about April 30, 2010, defendant AHMAD instructed his subordinates at the TOS's Investment Department not to memorialize AHMAD's name on any of TOS's paperwork associated with trades purportedly conducted by Hampton at defendant AHMAD's direction.

On the below dates, defendant AHMAD and Hampton committed the following overt acts by executing trades on behalf of the TOS where AHMAD directed his subordinates to record the name of another trader from TOS in place of AHMAD's name on the TOS paperwork for the trades.

| Overt Act | Date | Broker | Par Amount | Substitute TOS Trader |
|-----------|------|--------|------------|------------------------|
| cc. | 5/6/2010 | HAMPTON | 50,000,000.00 | Trader A |
| dd. | 5/6/2010 | HAMPTON | 50,000,000.00 | Trader A |
| ee. | 8/30/2010 | HAMPTON | 50,000,000.00 | Trader B |
| ff. | 8/30/2010 | HAMPTON | 50,000,000.00 | Trader B |
| gg. | 8/31/2010 | HAMPTON | 50,000,000.00 | Traders A/B |

hh.     On or about August 28, 2010, Hampton issued a $300,000 check to GGL from Hampton's personal checking account at Charter One Bank.

ii.     On or about August 30, 2010, defendant AHMAD endorsed and deposited Hampton's $300,000 check into GGL's JP Morgan Chase savings account.

jj.     On or about August 31, 2010, defendant AHMAD used money from the $300,000 deposit to transfer $10,000 from GGL's savings account to AHMAD's personal account at JP Morgan Chase.

11

kk.     On or about August 31, 2010, CHIAVAROLI used money from the $300,000 deposit to write a $30,000 check to defendant AHMAD drawn on GGL's business checking account.

ll.     On or about August 31, 2010, defendant AHMAD and CHIAVAROLI used money from the $300,000 deposit to make a $20,350.54 payment on AHMAD's personal credit card.

mm.     On or about September 27, 2010, almost one month after Hampton sent the $300,000 payment to GGL, Hampton sent a "promissory note" for $300,000 to defendant AHMAD for CHIAVAROLI's signature.

All in violation of Title 18, United States Code, § 371.


## COUNT TWO

(Federal Programs Bribery, 18 U.S.C. § 666 (a)(1)(B) and 2)

11.     The allegations contained in Paragraphs 1 through 10 of this Indictment are realleged as though fully set forth herein.

12.     From in or around January 2009 and continuing through in or around January 2011, in the Southern District of Ohio and elsewhere, defendant

## AMER AHMAD

as an agent of the State of Ohio, aided and abetted by others known and unknown to the grand jury, corruptly solicited, demanded, accepted and agreed to accept money and things of value for the benefit of any person from Hampton and HCM, intending to be influenced and rewarded in connection with any business, transaction and series of transactions of Ohio valued at $5,000 or

more, that is payments solicited and accepted by AHMAD, ALO, CHIAVAROLI, and companies under their control in exchange for the award of lucrative brokerage services business to Hampton and HCM.

All in violation of Title 18 U.S.C. §§ 666 (a)(1)(B) and 2.

## COUNT THREE

### (18 U.S.C. § 1343, 1346 and 2)

13.     The allegations contained in Paragraphs 1 through 10 of this Indictment are realleged as though fully set forth herein.

14.     From in or around January 2009 and continuing through in or around January 2011, in the Southern District of Ohio and elsewhere, defendants

### AMER AHMAD
### MOHAMMED NOURE ALO
### and
### JOSEPH M. CHIAVAROLI

and other persons known and unknown to the Grand Jury, aided and abetted by each other, did devise and intend to device a scheme and artifice to defraud and deprive the State of Ohio and its citizens of their right to the honest services of AHMAD through bribery, kickbacks, and the concealment of material information.

### EXECUTION OF THE SCHEME

15.     On or about the dates listed below, in the Southern District of Ohio and elsewhere, defendants AHMAD and ALO, for the purpose of executing the above-described scheme and artifice to defraud and deprive, and attempting to do so, and aided and abetted by

13

others in its execution, transmitted and caused to be transmitted by means of wire

communications in interstate commerce, the following writings, signals, and sounds:

| Date | Interstate Wire Communication |
|---|---|
| December 18, 2010 | $123,622.50 wire transfer from Hampton using HCM's business account (Account No. ****) at RBS Citizen's Bank, headquartered in Providence, RI, to ALO's personal account at JP Morgan Chase, Account No. **** |
| March 30, 2010 | $100,000 wire transfer from Hampton's personal account at RBS Citizen's Bank, headquartered in Providence, RI, to GGL's business checking account at JP Morgan Chase, Account No. **** |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

14

## COUNTS FOUR THROUGH SIX

### (Monetary Laundering, 18 U.S.C. § 1957 and 2)

16.     The allegations contained in Paragraphs 1 through 15 of this Indictment are realleged as though fully set forth herein.

17.     On or about the dates and in the amounts set forth below, the defendant,

## AMER AHMAD
### and
## JOSEPH M. CHIAVAROLI

and other persons known and unknown to the Grand Jury, aided and abetted by each other, knowingly participated in the transfer of the proceeds of a specified unlawful activity, that is: a scheme  to commit federal program bribery in violation of Title 18, United States Code, § 666, and honest services wire fraud in violation of Title 18, United States Code, §§ 1343 and 1346, within the Southern District of Ohio and elsewhere,  there and then did knowingly engage and cause another to engage in the following monetary transactions in criminally derived property that was of a value greater than $10,000.00 and was derived from said specified unlawful activity, and that affected interstate and foreign commerce:

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 4 | March 30, 2010 | $22,000 | Using the $100,000 wire transfer from Hampton's personal account at RBS Citizen's Bank to GGL's business checking account at JP Morgan Chase, Account No. ****, defendant AHMAD and CHIAVAROLI pay $22,000 to AHMAD's personal credit card at JP Morgan Chase on March 30, 2010. |

15

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|---|---|---|---|
| 5 | August 31, 2010 | $30,000 | Using the $300,000 deposit from Hampton on August 30, 2010 to GGL's JP Morgan Chase savings account, Account No. ****, defendant AHMAD and CHIAVAROLI make two transfers totaling $188,000 from GGL's savings account to GGL's JP Morgan Chase checking account, Account No. **** and CHIAVAROLI  writes a $30,000 check from GGL to defendant AHMAD, which AHMAD deposits into AHMAD's money market savings account, Account No. ****, on August 31, 2010. |
| 6 | August 31, 2010 | $20,350.54 | Using the $300,000 deposit from Hampton to GGL's JP Morgan Chase savings account, Account No. ****, defendant AHMAD and CHIAVAROLI transferred an additional $20,350.54 from the savings account to GGL's JP Morgan Chase checking account, Account No. ****, and then authorized a $20,350.54 Chase Epay payment to defendant AHMAD's personal JP Morgan Chase credit card. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

16

## COUNT SEVEN

(Monetary Laundering Conspiracy, 18 U.S.C. § 1956(h))

18.     The allegations contained in Paragraphs 1 through 17 of this Indictment are realleged as though fully set forth herein.

19.     The allegations contained in Counts Four through Six of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(2)(A).

20.     On or about the dates and in the amounts set forth above, the defendant,

**AMER AHMAD**
**and**
**JOSEPH M. CHIAVAROLI**

and other persons known and unknown to the Grand Jury, did knowingly conspire, confederate, and agree with each and others known and unknown to the grand jury to transfer of the proceeds of a specified unlawful activity, that is: a scheme to commit federal program bribery in violation of Title 18, United States Code, **§§** 666 and 2, and to commit honest services wire fraud in violation of Title 18, United States Code, §§ 1343, 1346 and 2, within the Southern District of Ohio, and elsewhere, did there and then did knowingly engage and cause another to engage in monetary transactions in criminally derived property that was of a value greater than $10,000.00 and was derived from said specified unlawful activity, and that affected interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 1956(h).

17

## COUNT EIGHT

(False Statement, 18 U.S.C. § 1001)

21.     The allegations contained in Paragraphs 1 through 20 of this Indictment are realleged as though fully set forth herein.

22.     On or about September 14, 2012, the defendant,

## AMER AHMAD

in the Southern District of Ohio, did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States by stating to special agents of the Federal Bureau of Investigation that (a) AHMAD's $150,000 investment in GGL was a loan, (b) that ownership documents reflecting his purchase of GGL were never executed, and (c) that AHMAD never had any management authority over GGL, when, in truth and in fact, as defendant then and there well knew, each of these assertions was false, fictitious, and fraudulent.

In violation of Title 18, United States Code, Section 1001(a)(2).

## CRIMINAL FORFEITURE

25.    The allegations contained in Counts One through Eight of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1)(C) and 28 U.S.C. § 2461(c).

26.    Upon conviction of the offenses in violation of 18 U.S.C. § 666 as set forth in Counts One through Two of this Indictment, and 18 U.S.C. §§ 1343 and 1346 as set forth in Counts One and Three of this Indictment, the defendants, AMER AHMAD, NOURE ALO and JOSEPH M. CHIAVAROLI, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.

27.    If any of the property described above, as a result of any act or omission of the defendants:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

19

All pursuant to 18 U.S.C. § 982(a)(2)(A) and 28 U.S.C. § 2461(c).

A TRUE BILL:

s/Foreperson
F O R E P E R S O N

MARK T. D'ALESSANDRO
FIRST ASSISTANT UNITED STATES ATTORNEY

By:

BRENDA S. SHOEMAKER
Financial Crimes Chief
Southern District of Ohio

JACK SMITH
Chief
Public Integrity Section
Criminal Division
United States Department of Justice

By:

ERIC L. GIBSON
Trial Attorney

20