UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


UNITED STATES OF AMERICA,.
                          .
  PLAINTIFF,              .     CASE NO. 2:13-CR-183(1)
                          .
         vs.              .     COLUMBUS, OHIO
                          .     DECEMBER 23, 2013
AMER AHMAD,               .
                          .
  DEFENDANT.              .
. . . . . . . . . . . . .


TRANSCRIPT OF PLEA PROCEEDINGS
BEFORE THE HONORABLE MICHAEL H. WATSON
UNITED STATES DISTRICT JUDGE




    APPEARANCES:

    FOR THE PLAINTIFF:     MARK T. D'ALESSANDRO
                           First Assistant United States Attorney
                           By:  DOUGLAS W. SQUIRES
                           Assistant United States Attorney


                           JACK SMITH
                           Chief, Public Integrity
                           By:  ERIC L. GIBSON
                           Trial Attorney
                           Public Integrity Section



    FOR THE DEFENDANT:     KARL H. SCHNEIDER, ESQUIRE
                           TRINA GOETHALS, ESQUIRE
                                  - - -

```
 1                    Monday Afternoon Session

 2                    December 23, 2013

 3                    2:30 p.m.

 4                         -  -  -

 5          THE COURTROOM DEPUTY:  2:13-CR-183(1), United States

 6    of America verses Amer Ahmad.

 7          Counsel, please enter your appearances.

 8          MR. SQUIRES:  Thank you, Your Honor.

 9          Doug Squires, along with Eric Gibson for the United

10    States.  Also at counsel table is Special Agent Jeff Rees of

11    the FBI.

12          THE COURT:  Good afternoon.

13          MR. SCHNEIDER:  Your Honor, Karl Schneider and my

14    colleague, Trina Goethals, are here representing Mr. Ahmad

15    who is seated right here next to me as well.  Thank you.

16          THE COURT:  Very good.

17          Good afternoon to you as well.

18          Mr. Ahmad, I need you to rise and raise your right hand

19    and be sworn, sir.

20      (Defendant sworn.)

21          THE COURT:  The purpose of placing you under oath,

22    sir, is to make you aware that you're in a federal courtroom

23    under oath and we expect that you're going to tell us the

24    truth.  But to the extent that something you would say today

25    turns out not to be the absolute truth, you may face
```

1 additional charges for perjury or making a false statement.

2 Do you understand that?

3   THE DEFENDANT:  Yes, Your Honor.

4   THE COURT:  All right.  State your full name for the

5 record, if you would, sir.

6   THE DEFENDANT:  My name is Amer Ahmad.

7   THE COURT:  All right.  No middle name?

8   THE DEFENDANT:  No middle name, Your Honor.

9   THE COURT:  All right.  And your age is?

10   THE DEFENDANT:  My age is 39 years old, Your Honor.

11   THE COURT:  Citizen of the United States?

12   THE DEFENDANT:  Yes, Your Honor.

13   THE COURT:  All right.  Your educational background,

14 sir?

15   THE DEFENDANT:  I attended high school at North Canton

16 Hoover High School in North Canton, Ohio.  I attended college

17 at Columbia University in New York for a bachelor's in

18 political science and I attended Harvard University where I

19 received my master's in business administration.

20   THE COURT:  Small little school in Massachusetts.

21   THE DEFENDANT:  Yes.

22   THE COURT:  Please be seated.

23  You can read and write the English language?

24   THE DEFENDANT:  Yes, Your Honor.

25   THE COURT:  All right.  You have previously had the

1    opportunity to review the charges against you with counsel,

2    correct?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  And it's my understanding that you have

5    previously entered not guilty pleas to the indictment in this

6    case; is that correct?

7            THE DEFENDANT:  That is correct, Your Honor.

8            THE COURT:  And today you wish to change your

9    previously entered not guilty plea and enter guilty pleas to

10   several of these charges; is that correct?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Mr. Schneider.

13           MR. SCHNEIDER:  Yes, sir.

14           THE COURT:  Have you had the opportunity to review the

15   defenses that Mr. Ahmad might have to these charges with him?

16           MR. SCHNEIDER:  We have, Your Honor.  Extensively.

17           THE COURT:  Do you believe he has understood all of

18   your counseling and advice?

19           MR. SCHNEIDER:  I do.

20           THE COURT:  Sir, are you currently on any medications

21   of any type?

22           THE DEFENDANT:  Yes, Your Honor, I am.

23           THE COURT:  And are you under the treatment of a

24   mental health professional?

25           THE DEFENDANT:  Yes, Your Honor, I am.

1          THE COURT:  And do those medications affect your

2    ability to understand the nature of these proceedings, for

3    instance?

4          THE DEFENDANT:  No, Your Honor.  I understand.

5          THE COURT:  And, Mr. Schneider, do you believe that

6    Mr. Ahmad is capable, even with the medication, of

7    understanding the nature of these proceedings?

8          MR. SCHNEIDER:  Without any doubt at all, Your Honor,

9    yes.

10         THE COURT:  Very good.

11         All right.  Mr. Squires, if you would please, or

12   Mr. Gibson, if you would please outline the plea agreement

13   for the record.

14         MR. SQUIRES:  Yes, Your Honor.

15         There is a written plea agreement in this case between

16   the United States and the defendant Amer Ahmad and his

17   attorneys.  And the summary of that plea agreement, written

18   plea agreement is as follows:

19         The offense and maximum penalties are spelled out in the

20   first paragraph in that the defendant agrees to plead guilty

21   to Counts 1 and 2 of a multiple-count indictment, that being

22   an eight-count indictment as well as a forfeiture allegation

23   filed in this case on August 15th of 2013.

24         Count 1 or one of the agreed charges to plead guilty to

25   charges the defendant with conspiracy to commit federal

1    program bribery, honest services wire fraud, and money

2    laundering in violation of Title 18 United States Code

3    Section 371 as well as those substantive offenses.  The

4    maximum penalties for Count 1 is a maximum term of five years

5    imprisonment, a fine of $250,000, a $100 special assessment,

6    and three years of supervised release.  The maximum penalties

7    for Count 2 is a maximum term of ten years imprisonment, fine

8    of $250,000, a $100 special assessment, and three years of

9    supervised release.

10        Specifically, Count 2, Your Honor, is the federal

11   program bribery violation of Title 18 United States Code

12   Section 666.

13        Defendant understands that supervised release terms in

14   addition to any prison term in the written agreement also

15   spells out what the violation of any term of supervised

16   release could mean to him.

17        Your Honor, there's a factual basis for the plea in that

18   we have a written statement of facts in this case which is

19   hereby incorporated both in this plea agreement and offered

20   to the Court in support of the record.  The defendant admits

21   the facts set forth in the statement of facts with this

22   agreement and agrees that those facts establish guilt on the

23   offense charged beyond a reasonable doubt.

24        Your Honor, the defendant understands the Court intends

25   to question him on the record regarding such facts and that

1    any misstatements could be a later charge of perjury.

2         Regarding trial and assistance and advice of counsel.

3    The defendant is satisfied with his current attorneys and

4    they have rendered effective assistance.  That is a specific

5    and written term.  Defendant understands by entering this

6    agreement he surrenders certain rights provided for by this

7    agreement including certain trial rights.  Among those, to be

8    represented by an attorney, if he can't afford one, one could

9    be appointed; to plead not guilty and be tried by a jury; to

10   be assisted by counsel during such jury; to confront and

11   cross-examine witnesses; to use compulsory process to summon

12   witnesses; not to be compelled to testify; and, to be

13   presumed innocent throughout trial unless found guilty by a

14   jury.

15        Most significantly, Your Honor, the defendant

16   understands if the plea of guilty to the charges set forth in

17   Count 1 and 2 of the indictment are accepted there will be no

18   trial of any kind, so that by pleading guilty he waives or

19   gives up the rights that I just mentioned.

20        Regarding the role of the Court and probation office.

21   The defendant understands the Court has jurisdiction and

22   authority to impose any sentence within the statutory maximum

23   described above but that the Court will determine the

24   defendant's actual sentence in accordance with Title 18

25   United States Code Section 3553(a).  The defendant also

1    understands the pursuant to *Booker*, the sentencing guidelines

2    are no longer mandatory but otherwise advisory.

3        As to the sentencing guidelines, Your Honor.  In

4    accordance with Rule 11(c)(1)(B) of the Federal Rules of

5    Criminal Procedure, and in light of both the offense and

6    relevant conduct, the United States and the defendant will

7    recommend the Court apply the provisions of United States

8    Guideline Manual effective November 1st of 2010 in this case.

9    United States and the defendant agree the defendant has

10   assisted the government in the investigation and prosecution

11   by timely notifying authorities of his intention to plead

12   guilty, of course saving the Court and the government time,

13   permitting the government to avoid unnecessary trial

14   preparation and costs of trial.

15       The defendant and the United States agree that pursuant

16   to 2B1.1, the amount of the loss which can't be reasonably

17   determined to a precise dollar shall be measured by the gain

18   to the conspirators and that resulted from the offense and

19   that amount is $3,212,877.91.  Which, according to the

20   guidelines of the United States Sentencing Guidelines, is

21   more than $2.5 million but not more than $7 million resulting

22   in a base level increase of 18 levels.

23       Defendant understands these stipulations and agreements

24   as to the guideline factors are not binding on the Court or

25   probation office for the determination of factual findings

1  and recommendations to the Court.

2       Regarding waiver and appeal, FOIA, and privacy rights,

3  Your Honor.  The defendant understands that the defendant has

4  a right to appeal any sentence imposed.  Nonetheless, the

5  defendant knowingly waives right to appeal the conviction and

6  any sentence within the statutory maximum described above on

7  the grounds set forth in 18 United States Code Section 3742

8  or any ground whatsoever in exchange for the concessions made

9  by the United States in this agreement, Your Honor.  This

10  agreement does not affect the right or obligations as set

11  forth in Title 18 United States Code Section 3742.  He agrees

12  to waive all rights and of course still has protection for

13  prosecutorial misconduct or ineffective assistance of

14  counsel, retaining those rights as appellate rights.

15       Defendant understands he's not a prevailing party in

16  this case.

17       As to the special assessment.  That shall be $100 for

18  each count of the two counts of conviction, Your Honor.

19       The payment of monetary penalties and stipulated

20  forfeiture.  The defendant understands and agrees that

21  whatever monetary penalties and forfeiture are imposed by the

22  Court will be due and payable immediately and subject to

23  immediate enforcement by the United States as provided for by

24  law.  The defendant agrees not to contest forfeiture alleged

25  in the indictment -- and that specific count is alleged as a

1   separate forfeiture count in the indictment -- and agrees to

2   the entry of a criminal monetary judgment in the amount of

3   $3,212,877.91, the same amount that we talked about regarding

4   the stipulation regarding loss.  Defendant agrees to provide

5   all financial information for the collection of such fees,

6   and it goes on to describe how he will cooperate with the

7   government in collection of those fees and not contest any

8   administrative action against him.

9        Regarding further prosecution in this district, Your

10  Honor.  The defendant understands the agreement does not

11  protect him from prosecution from perjury should he testify

12  untruthfully or for making false statements.  Nor is he

13  protected from prosecution for other crimes or offenses which

14  he does not disclose or about which he provides false

15  information and which the United States discovers by

16  independent investigation.  It goes on to say that should the

17  defendant fail to comply fully with the terms and conditions

18  set forth herein or should he fail to appear as required for

19  sentencing, the agreement is voidable at the election of the

20  United States in which case the defendant shall be subject to

21  prosecution as if the agreement had never been made.

22       This is also a significant section here under section 9,

23  Your Honor.  If the Court accepts the defendant's pleas of

24  guilty and the defendant fulfills each of the terms and

25  conditions of the agreement, the Public Integrity Section,

1    Criminal Division for the US Department of Justice and the

2    United States Attorney's Office for the Southern District of

3    Ohio agree that it will not further prosecute the defendant

4    for any crimes described in the indictment or statement of

5    facts, but that statement is limited to the indictment or the

6    statement of facts contained and presented to the Court here

7    today.

8         Your Honor, regarding waiver of protections of proffer

9    agreements.  To enable the government's proffer of facts to

10   prove at trial, the defendant unconditionally waives

11   protections contained in prior proffer agreements.  We did

12   that by letter, Your Honor, at least on two occasions with

13   the defendant with the same letter.  And the defendant agrees

14   the government may use all statements provided by him,

15   without limitation, in any proceeding brought by the

16   government against the defendant.

17        Use of information provided by the defendant under this

18   agreement.  Essentially no truthful information that the

19   defendant provides under the agreement will be used in

20   determining the applicable guideline range except provided in

21   section 2B1.8.  And of course that section is 1B1.8 allowing

22   those protections that the Court knows well.

23        Regarding a breach of the plea agreement and remedies.

24   The agreement is effective and signed by the defendant, the

25   defendant's attorney, and attorney for the United States.

```
 1      That occurred on today's date, Your Honor, just prior to this

 2      hearing.  We sat down in the US Attorney's Office for that

 3      purpose.  The defendant agrees to enter the agreement on the

 4      date and time scheduled by the Court and as we are here

 5      today.  If the defendant withdraws from the agreement,

 6      otherwise violates any provision then, and there are certain

 7      remedies, the United States will be released from the

 8      obligations on the agreement.  The defendant will be subject

 9      to prosecution for any criminal violation and prosecution

10      including the prosecution of the subject of this agreement

11      premised upon information provided.  And it goes on to spell

12      out essentially the due process concerns regarding any breach

13      of the agreement and determinations by the Court.

14          Your Honor, regarding the nature of the agreement and

15      modifications and collateral consequences.  Written agreement

16      constitutes the complete plea agreement between the US, the

17      defendant and Defendant's counsel.  The defendant and his

18      attorney acknowledge that no threats, promises or

19      representations have been made or agreements reached other

20      than those set forth in the agreement to cause the defendant

21      to plead guilty.  Any modification of the agreement shall be

22      only as set forth in writing as a supplemental to this

23      revised agreement signed by all parties.

24          Lastly, Your Honor, the defendant understands and

25      accepts in addition to any criminal sanctions, he may be
```

13

 1    subject to any civil or administrative consequences

 2    including, but not limited to, civil liability and loss of

 3    professional licenses including professional licenses

 4    regarding finances or any other that he may hold.

 5         Your Honor, this was signed under the signature of the

 6    First Assistant United States Attorney, bears my signature,

 7    Doug Squires.  Also signed under Jack Smith, the Chief of the

 8    Public Integrity Section for the US Department of Justice in

 9    the criminal division, and it bears Mr. Eric Gibson's

10    signature, trial attorney in the Public Integrity Section

11    with today's date.

12         The last page of that includes the defendant's signature

13    with some additional cautions and instructions.  It bears two

14    dates.  Mr. Amer Ahmad as the defendant signed it both

15    yesterday and today to make sure that that was his, in fact,

16    true signature.  We have a wet signature before the Court,

17    Your Honor.  And as well as defense counsel's signature both

18    Ms. Trina Goethals and Karl Schneider have signed it on

19    today's date with their bar numbers.

20         That's a summary of the written plea agreement, Your

21    Honor.

22         THE COURT:  Okay.  And the statement of facts is

23    lengthy.  It's a twelve-page statement of facts that's quite

24    detailed.  Do you wish to append this to the plea agreement

25    at this time?

1        MR. SQUIRES:  Yes, Your Honor.  Thank you.

2     That is a twelve-page statement of facts.  As indicated

3  in the written terms, it is also signed by the defendant and

4  his attorneys, as I've indicated, both on yesterday's date by

5  the defendant and today's date by his attorneys.

6        THE COURT:  And do you wish to have either Mr. Gibson

7  or your agent go over this twelve-page statement of facts?

8        MR. SQUIRES:  Mr. Gibson will offer the Court the

9  abbreviated statement of facts for purposes of this plea

10 hearing.

11       THE COURT:  Very good.  Thank you.

12       MR. GIBSON:  Good afternoon, Your Honor.

13       THE COURT:  Good afternoon, sir.  How are you?

14       MR. GIBSON:  Good.  Thank you.

15     By way of summarizing the statement of facts, I would

16 note first that the Treasurer of the State of Ohio is the

17 State's cash manager and chief investment officer with the

18 duty of managing and collecting the public funds.  The office

19 of the Treasurer of the State of Ohio has an investments

20 department whose responsibility it is to actively manage the

21 State's multi-billion dollar investment portfolio.  The State

22 of Ohio, whose funds are invested by the treasury, receives

23 in excess of $10,000 in federal funds annually.

24     That said, in connection with the statement of facts, in

25 summary, from approximately January of 2009 through January

1   of 2011, this Defendant Mr. Ahmad and others conspired to use

2   Ahmad's role as Deputy Treasurer to direct official State of

3   Ohio broker services business to Douglas E. Hampton, the

4   securities broker from Canton, Ohio, in return for payments

5   from Hampton.  Ahmad and Joseph M. Chiavaroli, who were in

6   business together in a landscaping company, concealed those

7   payments from Hampton by passing them through the accounts of

8   the landscaping business in which Ahmad and Chiavaroli both

9   held ownership interests.  Hampton also tunneled in excess of

10  $123,000 to Mohammed Noure Alo an attorney/lobbyist who was

11  Ahmad's close personal friend and business associate and did

12  so at Mr. Ahmad's direction.

13       As a result of the scheme, Mr. Hampton received

14  approximately $3.2 million in commissions, 360 trades on

15  behalf of the Ohio treasurer's office.  Mr. Ahmad and his

16  co-conspirators in exchange received in excess of $500,000

17  from Hampton.

18       In connection with executing the honest services wire

19  fraud scheme, the following interstate wire communications

20  were made:  On December 18 of 2010 as a result of the

21  conspiracy, $123,622.50 was wire transferred from Defendant

22  Hampton using HCM's business account at RBS Citizens Bank

23  headquartered in Providence, Rhode Island to a bank account

24  JPMorgan Chase belonging to Mohammed Noure Alo.

25       Also in execution and furtherance of the scheme, on

1    March 30th of 2010, as a result of the co-conspirators

2    actions, there's a $120,000 wire transfer from Hampton's

3    personal account the RBS Citizens Bank headquartered again in

4    Providence, Rhode Island to the landscaping business'

5    checking account at JPMorgan Chase.

6        With respect to the conspiracy to commit money

7    laundering, paragraph 50 details several transactions showing

8    that the proceeds of the bribery scheme were in fact spent in

9    violation of Title 18 Section 1957.  Specifically, March 30th

10   of 2010, $22,000 from a $100,000 wire transfer from Hampton's

11   personal account at RBS Citizens Bank which was sent to the

12   landscaping business was then used by Defendant Ahmad and his

13   co-conspirator Joseph Chiavaroli to pay $22,000 to Ahmad's

14   personal credit card at JPMorgan Chase.

15       Additionally, on August 31st of 2010, using a $300,000

16   deposit from Hampton which was part of the scheme on

17   August 30th of 2010, which money was deposited in the

18   landscaping company's savings account, Defendants Ahmad and

19   Chiavaroli made two transfers totaling $188,000 from the

20   landscaping company's savings account to company B's or the

21   landscaping company's checking account and from there,

22   Mr. Chiavaroli wrote a $30,000 check drawn on the company's

23   checking account to Mr. Ahmad; Mr. Ahmad deposited into his

24   money market savings account on or about August 30th of 2010.

25       Additionally, on August 31st of 2010 from that same

17

```
 1    $300,000 deposit from Hampton, $20,000 -- $20,350.54 was

 2    transferred by Mr. Ahmad and Mr. Chiavaroli from the

 3    company's savings account to the company's checking account

 4    and then a $20,000 -- $20,350.54 e-payment was authorized by

 5    Mr. Ahmad and Mr. Chiavaroli again going to Mr. Ahmad's

 6    JPMorgan Chase credit card.

 7         That would be a summary of the scheme.

 8         THE COURT:  Thank you.

 9    Mr. Schneider, first and foremost, the plea agreement,

10    that is a ten-page plea agreement containing 13 paragraphs.

11    Did you fully explain this plea agreement to Mr. Ahmad?

12         MR. SCHNEIDER:  I have, Your Honor.  In different

13    versions and up until this weekend and this particular one

14    that he has executed.  He's been over it with us on several

15    occasions.  And I can also say that the summary of the plea

16    agreement that was entered in the record by Mr. Squires is

17    accurate from our understanding as to the terms and

18    conditions of this particular arrangement.

19         THE COURT:  Thank you.

20    Trina, do you believe that your client has understood

21    all of your counseling and advice throughout the time that

22    you've been able to spend with him?

23         MS. GOETHALS:  Yes, Your Honor.

24         THE COURT:  All right.  Mr. Ahmad, you also read this

25    plea agreement, correct?
```

18

1        THE DEFENDANT:  Yes, Your Honor.  Numerous times.

2        THE COURT:  And you had it explained to you by

3   counsel?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  And they answered all of your questions to

6   your satisfaction?

7        THE DEFENDANT:  Yes.

8        THE COURT:  And have you been completely satisfied

9   with the advice, representation and counsel provided to you?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Do you feel that all of the

12   representations that the government has made to you are

13   contained -- with respect to how this case will be resolved

14   are contained within this plea agreement?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  Do you understand that the plea agreement

17   is an agreement between yourself, your counsel, and counsel

18   for the government?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  I'm not a party to it.  I'm not bound by

21   it.  So that I can sentence you consecutively to the

22   statutory maximum sentences.  Do you understand that?

23        THE DEFENDANT:  Yes, Your Honor, I do.

24        THE COURT:  I could do that.

25        THE DEFENDANT:  Yes, Your Honor.

19

```
1          THE COURT:  18 United States Code Section 3553(a)
2    governs sentencing.  One of the 3553(a) factors that I must
3    consider are the sentencing guidelines.  The sentencing
4    guidelines are no longer mandatory.  They are advisory.  They
5    will produce a different number, a different range of
6    sentence undoubtedly than the statutory maximums.  The Court
7    will consider both.  But I want you to understand that you
8    could face the maximum consecutive sentence.
9       Do you understand that?
10          THE DEFENDANT:  I do understand that, Your Honor.
11          THE COURT:  All right.  Do you feel that you have been
12   threatened in any way by any agent of the government at any
13   time to bring you to the point that you find yourself at at
14   this point?  Do you feel coerced, in other words, to enter
15   into this plea agreement?
16          THE DEFENDANT:  No, I do not feel coerced.
17          THE COURT:  Are you offering to plead guilty to Counts
18   1 and 2 of this indictment because you are indeed guilty of
19   these two offenses?
20          THE DEFENDANT:  Yes, Your Honor.
21          THE COURT:  All right.  You understand that these are
22   federal felonies?
23          THE DEFENDANT:  Yes, Your Honor.
24          THE COURT:  That you will lose your right to vote,
25   your right to hold public office, your right to serve on a
```

20

1    jury, your right to possess a firearm for the period of time

2    associated with these convictions and that the only way to

3    restore those rights is to serve the time and any subsequent

4    supervised release and to apply for some form of presidential

5    clemency and have that granted?  Do you understand that?

6         THE DEFENDANT:  I do understand that, Your Honor.

7         THE COURT:  Do you understand the concept of

8    supervised release?

9         THE DEFENDANT:  Yes, Your Honor, I do.

10        THE COURT:  So it's a period of postconviction,

11   postincarceration supervision by the Court's probation

12   department.  There are standard conditions that everyone on

13   supervised release must follow.  There will undoubtedly be

14   special conditions that would apply to your case because of

15   the nature of the charges.  If you were to violate supervised

16   release you could be brought back before the Court for a

17   revocation proceeding and one of the options the Court would

18   have would be to revoke supervised release and to possibly

19   send you back to prison for a period of time with a new term

20   of supervised release to be imposed with no credit for time

21   already served on supervised release.

22        You're aware of that?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  All right.  You have the following rights:

25   You may still plead not guilty to these charges and persist

21

1      in that not guilty plea.  If you were to do so, you'd have a

2      right to a jury trial.  Do you understand that?

3             THE DEFENDANT:  I understand that, yes.

4             THE COURT:  At every stage of the proceedings you have

5      the right to be represented by counsel.  Do you understand

6      that?

7             THE DEFENDANT:  Yes, Your Honor.

8             THE COURT:  You have no burden of proof at trial.

9      Instead, the government must prove each of the elements of

10     these two offenses beyond a reasonable doubt.  And if they

11     fail to prove any one of the elements for either of these

12     offenses, you can't be convicted of it that offense.  All

13     right?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  And when I say all right, I'm really

16     asking a question.  Do you understand?

17            THE DEFENDANT:  I understand, Your Honor.

18            THE COURT:  For any reviewing court.

19        So in any event.  Through counsel, you have the right to

20     confront and cross-examine the government's witnesses that

21     would be called against you.  Do you understand that?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  If you elected to remain silent, in other

24     words, you have a Fifth Amendment right to remain silent.  No

25     one can compel you to make any statement that is

 1    incriminating in any way so that you could sit mute

 2    throughout the trial.  The government could put on its case

 3    but they could not argue that your silence was evidence of

 4    guilt.  Do you understand that?

 5         THE DEFENDANT:  Yes, Your Honor.

 6         THE COURT:  All right.  If you elected to put on a

 7    defense, you have the right to issue subpoenas, to have the

 8    Court enforce those subpoenas, to have witnesses brought into

 9    court to testify in your defense.  Do you understand that?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Finally, do you understand that before I

12    can accept a guilty plea in these two cases you have to waive

13    or give up all the rights I just told you about?

14         THE DEFENDANT:  I understand that, Your Honor.

15         THE COURT:  All right.  Please be seated for a moment.

16    Mr. Squires, would you please outline the elements of

17    the two offenses that he's offering to plead guilty to and

18    that you must prove beyond a reasonable doubt at trial.

19         MR. SQUIRES:  Yes, Your Honor.

20    I'm reading the government's plea agreement as to Counts

21    1 and two 2 the indictment previously referenced.

22         The elements to Count 1, conspiracy, in violation of 18

23    United States Code Section 371.  First, that an agreement

24    existed between two or more persons to commit bribery, honest

25    service wire fraud and/or money laundering; second, the

1     defendant knowingly participated in the conspiracy with the

2     intent to commit federal program bribery, honest services

3     wire fraud and/or money laundering; third, one of the

4     conspirators committed at least one overt act in furtherance

5     of the conspiracy; and, the acts occurred in the Southern

6     District of Ohio on or about the dates set forth in the

7     indictment.

8          THE COURT:  So you understand, then, that this doesn't

9     mean that they have to prove that you committed one of the

10     acts.  It only means that they have to prove that one of the

11     co-conspirators committed one of these acts.  Do you

12     understand that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  All right.  Go on.

15          MR. SQUIRES:  Thank you, Your Honor.

16     Your Honor, I mentioned several underlying offenses

17     which are the basis of the conspiracy, federal program

18     bribery, honest service wire fraud, and money laundering.

19     As to honest service wire fraud in violation of Title 18

20     United States Code Section 1343 and 1346 the government would

21     have to prove, first, the defendant knowingly devised or

22     participated in a scheme to defraud the public of its right

23     to the honest services of a public official through bribery

24     and/or kickbacks; second, the defendant did so knowingly and

25     with intent to defraud; third, the scheme or artifice to

1    defraud involved a material misrepresentation, false

2    statement, false pretense, or concealment of fact; and,

3    fourth, in advancing or furthering or carrying out the scheme

4    to defraud, the defendant transmitted, or caused to be

5    transmitted, any writing, signal or sound by means of wire

6    communication in interstate or foreign commerce.

7         As to the money laundering in violation of Title 18

8    United States Code Section 1957.  First, the government would

9    have to prove the defendant knowingly engaged and caused

10   another to engage in a monetary transaction; second, the

11   defendant knew the transaction involved property or funds

12   that were the proceeds of some criminal activity; and, third,

13   the property had value of more than $10,000.

14        Your Honor, the penalties for Count 1, mandatory minimum

15   there is none.  As a possible maximum, that is five years in

16   prison, a $250,000 fine, $100 special assessment, and a

17   potential of three years of supervised release.

18        THE COURT:  Thank you.

19        You understand those elements?

20        THE DEFENDANT:  Yes, I do, Your Honor.

21        THE COURT:  And you understand that each of those

22   elements would have to be proved beyond a reasonable doubt or

23   you could not be convicted of that charge at trial?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  Go right ahead, Mr. Squires.

25

1          MR. SQUIRES:  Thank you, Your Honor.

2     As to Count 2, the elements of federal program bribery

3     and aiding abetting that offense in violation of Title 18

4     United States Code Section 666(a)(1)(B) and Section 2.

5     As to the elements of 18 United States Code Section

6     666(a)(1)(B), first, the government would have to prove the

7     defendant was an agent of an organization, a state or local

8     or tribal government, or an agency of a state, local or

9     tribal government; second, the government would have to prove

10    that the organization, state or local government, state or

11    local government agency or tribal government received

12    assistance in excess of $10,000 in a one year period; third,

13    the federal assistance was under a federal program involving

14    a grant, contract, subsidy, guarantee, insurance, or other

15    form of federal assistance; and, fourth, the government would

16    have to prove the one-year period of federal assistance was

17    twelve months before or after the commission of the offense

18    as defined in 18 United States Code Section 666(d)(5); the

19    fifth element, Your Honor, the defendant solicited or

20    demanded for the benefit of any person or accepted or agreed

21    to accept a thing of value from any person; the sixth element

22    the government would have to prove is that the defendant

23    intended to be influenced or rewarded in connection with the

24    transaction or series of transactions of the organization or

25    agency that involved $5,000 or more; the seventh element is,

1    Your Honor, the defendant acted corruptly; and, eighth, the

2    act occurred within the Southern District of Ohio on or about

3    the dates set forth in the indictment.

4         As to the elements of Section 2, that being aiding and

5    abetting; first, the defendant aided and abetted, counsel,

6    commanded, induced or procured the commission of the above

7    offense within the Southern District of Ohio; and, second of

8    this two element count, the defendant did so willingly and

9    willfully.

10        As to the penalties as to Count 2, Your Honor, there are

11   no mandatory minimums.  However, there is a possible maximum

12   penalty of ten years in prison, a $250,000 fine, a $100

13   special assessment, and three years of supervised release.

14        And this is submitted by my office and Mr. Gibson's

15   office.

16          THE COURT:  Thank you.

17        Mr. Ahmad, the same applies to Count 2.  Each of the

18   elements must be proved beyond a reasonable doubt or you

19   cannot be convicted.

20        A couple of questions, Mr. Squires.  First of all, the

21   federal program involved.

22          MR. GIBSON:  Your Honor, for purposes of 666, it's not

23   necessary that a specific program be identified.  The fact of

24   the matter is that the State of Ohio receives far, far in

25   excess of $10,000 from the federal government per year for a

1    variety of programs.  In fact, the state treasury is

2    responsible for investing a significant number of those funds

3    until they can be used by the State of Ohio for the

4    designated purposes.

5         Specifically, the State of Ohio gets money from the

6    Department of Justice, Department of Transportation, a number

7    of other federal agencies.

8              THE COURT:  Human Services.

9              MR. GIBSON:  Yes, sir.

10             THE COURT:  All right.  How did this come to light?

11             MR. GIBSON:  There were initially media reports

12   questioning the relationship between Mr. Alo and Mr. Ahmad in

13   connection with an arrangement involving another institution

14   and another set of transactions managed by the state

15   treasury.  From there, the investigation led to Mr. Hampton

16   and the uncovering of the scheme involving Mr. Hampton and

17   the work he was doing on behalf of the state treasurer's

18   office at the direction of Mr. Ahmad.

19             THE COURT:  In my experience, this sounds like the

20   sort of thing that might come to light through an anonymous

21   complaint to the Inspector General.  Is that what happened

22   here or not?

23             MR. GIBSON:  No, sir.

24             THE COURT:  All right.

25             MR. SQUIRES:  What Mr. Gibson said was completely

28

```
1    accurate.  I just want to add, Your Honor, that original
2    initial investigation is the subject of an ongoing
3    investigation and not the subject of currently this
4    indictment or the statement of facts, for purpose of clarity.
5         THE COURT:  Thank you.
6         You heard a shortened version of the alleged facts.
7    You've had the opportunity to read the twelve-page factual
8    basis, correct?
9         THE DEFENDANT:  Yes, Your Honor.
10        THE COURT:  Is there anything in this 52 paragraph
11   factual basis that you take issue with?
12        THE DEFENDANT:  No, Your Honor.
13        THE COURT:  There's nothing in here that is not true
14   as far as you know; is that correct?
15        THE DEFENDANT:  That is correct, Your Honor.
16        THE COURT:  And you indeed signed this document both
17   yesterday and today?
18        THE DEFENDANT:  Yes, Your Honor.
19        THE COURT:  All right.  After having read it and
20   understood it and affirmed that it was factually accurate?
21        THE DEFENDANT:  Yes, Your Honor.  I read it numerous
22   times.
23        THE COURT:  Very good.
24        You understand that the Court will order a presentence
25   investigation?
```

29

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And that you and Ms. Goethals and

3    Mr. Schneider about will have an opportunity to sit down with

4    the probation officer writing your presentence report to

5    provide background information for that report.  If

6    objections are necessary to be filed, they will file them.

7    They will attempt to negotiate --

8          MR. SCHNEIDER:  Could we approach?

9          THE COURT:  Yes.

10     (Thereupon, the Court and counsel conferred off the record

11   out of the hearing of the court reporter.)

12         THE COURT:  I suppose to continue, counsel will meet

13   with the probation officer and try to negotiate any

14   objections away prior to sentencing.  To the extent that they

15   remain for sentencing, we'll deal with them on the day of

16   sentencing.  All right?

17         THE DEFENDANT:  I understand that.

18         THE COURT:  All right.  The present release situation

19   is that you're on bond.  You reside in Chicago, Illinois?

20         THE DEFENDANT:  (Nodding head affirmatively.)

21         THE COURT:  The government's position is?

22         MR. SQUIRES:  We ask that he remain on the conditions

23   ordered at the time of the initial arraignment on the

24   indictment.  I have a representation from counsel that his

25   passport has been surrendered and that that is true.  He only

1    has one passport; that he is a US citizen if the Court may

2    inquire about that.

3          THE DEFENDANT:  Yes.  I am a US citizen only holding

4    one passport and I reside in the city of Chicago where I

5    have -- I check in with the Chicago office, pretrial services

6    Chicago office on a weekly basis on this case.

7          THE COURT:  Very good.

8          MR. SCHNEIDER:  And surrendered --

9          THE COURT:  And currently under supervision.

10          THE DEFENDANT:  Correct.  And I surrendered my

11    passport on the day of arraignment on August 15, 2013, Your

12    Honor.

13          THE COURT:  Thank you.

14       Mr. Ahmad, how do you plead to Count 1, conspiracy,

15    violation of 18 United States Code Section 371?

16          THE DEFENDANT:  Your Honor, I plead guilty.

17          THE COURT:  As to both aspects of the honest services

18    wire fraud and the money laundering?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.

21          MR. GIBSON:  Your Honor, it's actually three objects.

22    The 666 was also an object of the conspiracy.

23          THE COURT:  Very good.

24       And then Count 2, how do you plead to that?

25          THE DEFENDANT:  Your Honor, I plead guilty.

```
 1              THE COURT:  Very good.
 2         The Court will accept your guilty plea at this time;
 3    will find that there is more than an ample statement of facts
 4    to support all of the operative elements that must be proved
 5    beyond a reasonable doubt.  There is a sufficient factual
 6    basis to support the guilty plea.  You are now adjudged
 7    guilty of both of these offenses.
 8         And as I said, the Court will order a presentence
 9    investigation.  Bond will continue under the same conditions
10    as previously set.  Continue to report to your pretrial
11    services officer.  Sentencing will be ten to twelve weeks
12    down the road generally.  All right?
13              THE DEFENDANT:  Yes, Your Honor.
14              THE COURT:  All right.  Very good.
15         Anything further?  Have we missed anything?
16         MR. GIBSON:  No, Your Honor.
17         MR. SQUIRES:  No, Your Honor.
18         MR. SCHNEIDER:  I don't think so, Your Honor.
19              THE COURT:  All right.  Very good.  That will be all.
20      (The hearing of this cause was adjourned at 3:06 p.m.)
21
22
23
24
25
```

1                    C E R T I F I C A T E

2

3          I, Lahana DuFour, do hereby certify that the foregoing

4   is a true and correct transcript of the proceedings before

5   the Honorable Michael H. Watson, Judge, in the United States

6   District Court, Southern District of Ohio, Eastern Division,

7   on the date indicated, reported by me in shorthand and

8   transcribed by me or under my supervision.

9

10

11                    s/Lahana DuFour
                      Lahana DuFour, RMR, CRR
12                    Official Federal Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25